UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Timothy Perri

    v.                                  Civil No. 13-cv-403-JD
                                        Opinion No. 2014 DNH 120
Richard M. Gerry, Warden,            (Corrected Opinion No.)
New Hampshire State Prison


O R D E R

    Timothy Perri seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the ground that his state conviction on charges of kidnaping, aggravated felonious sexual assault, attempted aggravated felonious sexual assault, and criminal threatening was the result of an unnecessarily suggestive identification process in violation of the Fourteenth Amendment.  Warden Richard M. Gerry moves for summary judgment contending that Perri's claim is both unexhausted and waived and, in addition, would fail on the merits.  Perri also moves for summary judgment.


Standard of Review

    In habeas corpus proceedings under § 2254, motions for summary judgment are considered under Federal Rule of Civil Procedure 56 but only to the extent that the application of Rule 56 is not inconsistent with § 2254 and the Rules Governing Section 2254 Cases.  Fed. R. Civ. P. 81(a)(4); Rule 12 of the Rules Governing Section 2254 Cases; Cutler v. Warden, 2013 WL 6267806, at *1 (D.N.H. Dec. 3, 2013).  The parties agree that

there are no disputed facts, that a hearing is not necessary, and that the case is submitted for judgment as a matter of law.

To obtain relief under § 2254, a petitioner must exhaust the available state court remedies or show that an exception to the exhaustion requirement applies. § 2254(b)(1). For claims that were adjudicated on the merits in state court, a petitioner must demonstrate that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). A decision is entitled to deference under § 2254(d) as long as the court adjudicated the federal claim on the merits or under a state law standard that is at least as protective of the defendant's rights as federal law. Morgan v. Dickhaut, 677 F.3d 39, 49 (1st Cir. 2012).

## Background

The background information is taken from the decision of the New Hampshire Supreme Court on Perri's direct appeal, State v. Perri, 164 N.H. 400 (2013).

Late in the evening of August 22, 2008, N.R. was walking home from work along Route 16 in North Conway, New Hampshire. A man approached her and propositioned her for sex in exchange for money. He said he was from out of town and was working as a painter. N.R. declined and walked away. Further down the road

near a scenic overlook, the man approached N.R. again and made a sexual advance.  When N.R. rejected him, the man punched her in the face, pulled her into the woods, and raped her.

N.R. reported the attack to police.  "She described her attacker as a white man in his late twenties or early thirties, with a thin, muscular build, a narrow face, and a goatee."  Id. at 402.  On September 18, the police received a report of another attack in the same area and issued an alert to be on the lookout for the man N.R. had described.  Several days later, New Hampshire State Trooper Craig McGinley saw Perri walking near the scenic overlook, identified several of the characteristics N.R. had described, and apprehended him.

The police assembled an array of eight photographs of men, including Perri.  The other seven photographs were selected from the police department's computer system.  The police showed the photographs to N.R. at her home on September 25.  N.R. identified Perri as the attacker.

The next day, N.R. met with Elizabeth Kelley, program director of the Child Advocacy Center, at the police station.  In response to Kelley's questioning, N.R. expressed uncertainty about her identification of Perri.  The police suspended their investigation because of N.R.'s uncertainty.

Despite the suspension by the police department, Trooper McGinley continued his investigation and assembled a file on Perri.  McGinley's file included photographs of Perri and documents about his criminal background.  McGinley met with N.R.

at work on June 19, 2009, and told her that he thought she had identified the right person as her attacker.  McGinley gave N.R. his file on Perri and let her look through it by herself for about five minutes.  McGinley retrieved the file and gave N.R. his contact information.  He told her to contact him if she wanted to pursue the matter.  On June 28, 2009, N.R. sent a text message to McGinley in which she stated that she would like to "help put this guy away."

N.R. met with Officer Jody Eichorn of the Moultonborough Police Department on July 22.  Eichorn asked N.R. about her identification of her attacker in September of 2008.  N.R. said that she had identified her attacker in the photograph array and explained that the police then made her "second-guess" herself by repeatedly asking her how sure she was of the identification. N.R. did not remember meeting with Kelley and discussing the identification with her.  When Eichorn asked if she were positive that she had identified her attacker, N.R. responded, "I'm, yeah."  Perri was arrested on July 24, 2009.

Perri was charged with aggravated felonious sexual assault and kidnaping.  He moved to suppress N.R.'s identification from the photograph array in September of 2008, any testimony about N.R.'s conversation with Eichorn, and an in-court identification. His motion was denied.  Perri was tried in April of 2010, but when the jury could not reach a verdict, a mistrial was declared. The state then added charges of attempted aggravated felonious sexual assault and criminal threatening.  The second trial was

4

held from August 27 to September 7, 2010.  Perri was convicted on all counts.  He was sentenced to consecutive terms of imprisonment on each of the charges.

On appeal, Perri argued that the trial court erred in denying his motion to suppress the identification evidence, erred in prohibiting him from eliciting from N.R. that the person who helped prepare her for the second trial was the jury foreperson in the first trial, erred in denying his motion to suppress evidence that a police officer found a folding pocket knife when Perri was frisked when detained, and erred in admitting the evidence of the pocket knife.  The New Hampshire Supreme Court affirmed his conviction.

## Discussion

For purposes of his petition for habeas corpus relief, Perri challenges the New Hampshire Supreme Court's decision affirming the trial court's decision that N.R.'s identification of Perri as her attacker was admissible at trial.  Perri contends that the identification evidence violated his federal due process rights.  The warden moves for summary judgment on the grounds that the identification claim was not exhausted in state court and was waived and, alternatively, that the New Hampshire Supreme Court's decision was neither contrary to nor an unreasonable application of federal law.

A.  <u>Waiver and Exhaustion</u>

On appeal, Perri challenged the trial court's decision to admit N.R.'s identification of him as the attacker and related evidence about that identification as a violation of his due process rights.  The warden argues that the identification claim was waived and was not exhausted because Perri now relies on <u>Foster v. California</u>, 394 U.S. 440 (1969), which was not raised or cited before the state courts.  Perri objects, asserting that the warden is relying on too narrow a view of what claim was presented.

1.  <u>Waiver</u>

In support of his waiver theory, the warden merely cites two New Hampshire cases pertaining to waiver of an issue on appeal when a defendant fails to present the issue in the notice of appeal or fails to brief an issue that was included in the notice.  It is undisputed that Perri raised the issue on appeal challenging on due process grounds the admissibility of the identification evidence.  The warden does not explain why omitting the <u>Foster</u> case from the notice of appeal and briefing on appeal would constitute waiver of the identification issue.

Under these circumstances, the question of waiver and presumably the related issue of procedural default are not sufficiently developed to permit consideration.  <u>See</u> <u>Coons v. Industrial Knife Co., Inc.</u>, 620 F.3d 28, 44 (1st Cir. 2010); <u>see</u>

also Pike v. Guarino, 492 F.3d 61, 73 (1st Cir. 2007) (discussing defense of procedural default).

2. Exhaustion

The warden also contends that Perri failed to exhaust the identification claim because he did not cite the Foster case in the state court proceedings. "A petitioner has exhausted state remedies when his claim is fairly presented to the state courts." Rosenthal v. O'Brien, 713 F.3d 676, 688 (1st Cir. 2013) (internal quotation marks omitted). To satisfy the exhaustion requirement, the petitioner must "show that he fairly and recognizably presented to the state courts the factual and legal bases of his federal claim." Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011). That burden may be satisfied in one of several ways which include "reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim." Id.

In support of his failure-to-exhaust theory, the warden merely cites the dissenting opinion in Duncan v. Henry, 513 U.S. 364, 370 n.1 (1995), quoting a Ninth Circuit case, for the proposition that a petitioner must present the operative facts and legal theory to the state court. Without any analysis, it is

unclear why that proposition would bar Perri's claim in this case. As the petitioner notes, he raised the claim in state court that use of the identification evidence violated his state and federal due process rights. See, e.g., Clements v. Maloney, 485 F.3d 158, 168 (1st Cir. 2007). Therefore, the petitioner has sufficiently shown that the claim was exhausted.

B. Claim on the Merits

Perri contends that the New Hampshire Supreme Court's decision is contrary to the precedent of the United States Supreme Court concerning the corrupting effect of suggestions by the police to influence an eyewitness's identification of an accused. "A state court's ruling is contrary to federal law either when it adopts a rule that contradicts the governing law set forth in the Supreme Court's cases or when it reaches a different result from a Supreme Court decision under a set of facts that are materially indistinguishable." Rosenthal, 713 F.3d at 683 (internal quotation marks omitted). The petitioner bears the burden of showing that the state court decision is contrary to established federal law. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

Perri argues that the New Hampshire Supreme Court's decision is contrary to United States Supreme Court precedent because the court failed to consider the corrupting effect of McGinley's conduct, including the motive for providing the suggestive circumstances for N.R.'s second identification. Perri contends

that this case presents more egregious circumstances than those considered in Foster, 394 U.S. at 443, and that the New Hampshire Supreme Court made an error of law in its analysis.  Perri contends that he is entitled to summary judgment and asks that the case be remanded to the New Hampshire Supreme Court.[1]

In Foster, the Supreme Court stated that "judged by the totality of the circumstances, the conduct of identification procedures may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law."  Foster, 394 U.S. at 442 (internal quotation marks omitted).  The police procedures in Foster involved two highly suggestive lineups, without a positive identification, followed by showing the suspect, by himself, to the witness, which yielded an identification.  The Court concluded that the suggestive procedures made it "all but inevitable that [the witness] would identify petitioner whether or not he was in fact 'the man.'"  Id. at 443.  The Court then held that "[t]his procedure so undermined the reliability of the eyewitness identification as to violate due process."  Id.  Although McGinley's conduct caused an unnecessarily suggestive identification procedure, the facts here are materially different from those in Foster.

---

[1] Granting a petition under § 2254 does not cause the federal case to be "remanded" to state court.  Therefore, Perri seeks relief that cannot be granted under § 2254.

9

Since Foster, the United States Supreme Court has revisited the standard for determining when identification procedures violate due process. See Perry v. New Hampshire, 132 S. Ct. 716, 723-25 (2012). In Neil v. Biggers, 409 U.S. 188 (1972), and Manson v. Brathwaite, 432 U.S. 98 (1977), the Court held that due process does not require the automatic suppression of witness identification "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Perry, 132 S. Ct. at 724. Instead, "the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created 'a substantial likelihood of misidentification.'" Id. (quoting Biggers, 409 U.S. at 201).

"[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Perry, 132 S. Ct. at 724. In that event, the identification must be excluded if "the 'indicators of [a witness's] ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion . . . ." Id. at 725 (quoting Mason v. Brathwaite, 432 U.S. 98, 114 (1977)). "'[R]eliability [of the eyewitness identification] is the linchpin . . . .'" Perry, 132 S. Ct. at 724-25 (quoting Brathwaite, 432 U.S. at 114). In making that determination, factors to be considered by the court include "'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of

10

his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'"  Perry, 132 S. Ct. at 725 n.5 (quoting Braithwaite, 432 U.S. at 114, citing Biggers, 409 U.S. at 199-200).

In this case, the New Hampshire Supreme Court determined that due process was implicated by McGinley's unnecessarily suggestive identification process.  Then, the supreme court considered the factors necessary for determining whether N.R.'s identification was reliable, despite McGinley's conduct.  The supreme court concluded, based on that analysis, that N.R.'s identification was reliable and that the trial court properly found the evidence admissible.  Therefore, the New Hampshire Supreme Court followed the requirements of United States Supreme Court precedent.

## Conclusion

For the foregoing reasons, the respondent's motion for summary judgment (document no. 6) is granted.  The petitioner's motion for summary judgment (document no. 10) is denied.  The petition for a writ of habeas corpus (document no. 1) is denied.

Because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                          _____
                                          Joseph A. DiClerico, Jr.
                                          United States District Judge

May 29, 2014

cc:   Richard Guerriero, Esq.
      Elizabeth C. Woodcock, Esq.